IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, *et al.*,

*Plaintiffs*,

v.

THE HONORABLE KATHY HOCHUL, in her official capacity as Governor of the State of New York, *et al.*,

*Defendants*.

Case No. ______________

**DECLARATION OF PLAINTIFF JOSÉ HERNANDEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

JOSÉ HERNANDEZ, pursuant to 28 U.S.C. § 1746 hereby declares as follows:

1. I am over 18 years of age and am otherwise competent to make this Declaration. I am submitting this Declaration in Support of Plaintiffs' Motion for Temporary Restraining Order in the above-captioned litigation. The evidence set out in the following Declaration is based on my own personal knowledge.

2. I am a citizen and resident of the State of New York. Over thirty years ago, I experienced a C5 spinal cord injury. As a result, I am paralyzed from the neck down with limited movement in my arms and no movement below my shoulders.

3. I work as an advocacy and policy associate for the New York Association on Independent Living. I have a son, and I am extremely proud of him.

4. My injuries limit my capacity for breathing. I have no control of my diaphragm, so coughing is very difficult. Given my condition, when I am congested, it can make me feel like I am drowning.

5. I have home care 24 hours a day. I need help with dressing, showering, brushing my teeth, toileting, cooking, and eating. Without assistance with these tasks, I would not be able to do any of these things, and I would die from starvation. Each of these tasks is a challenge that I face every day.

6. I have experienced medical discrimination over the course of my disability. For example, at one point, I was in an emergency room for a toe injury. The medical provider treating me suggested amputating my toe since I was not using it. I was shocked. I had to push back against this "treatment," and seek other help. A spinal cord specialist later gave me an ointment that resolved the issue in a week with no surgery. This incident still informs my lack of trust in medical professionals. I know that I must be on guard and always ready to advocate for myself. A scenario where I am unable to advocate for myself—either from depression or otherwise—terrifies me.

7. I am also aware of the dangers that people face with being classified as "terminal" and risks associated with doctors guessing how long someone has to live. My mother was diagnosed with stage 4 ovarian cancer. The doctors told her that she was "terminal" and that she had six months to live. She lived another 13 years after this diagnosis. If my mother was alive under New York's Medical Aid in Dying Act (the "Act"), it would have been far too easy to pressure her into assisted suicide to avoid the pain. I think about how we would have lost those 13 years together with her.

8. I have deep concerns regarding the impact of the Act. As a person with a life-threatening disability, I am automatically labeled as having a "terminal illness" by the Act. The option to seek assisted suicide is immediately available to me. Simply stated, this is discrimination. Doctors have been wrong about my conditions in the past, and I fear I will be

denied care by my insurance or steered into assisted suicide because it is cheaper or more efficient for me to simply not receive adequate care.

9. The Act devalues people like me. The Act tells people like me that we qualify for suicide assistance, not suicide prevention. I find such discrimination utterly repugnant.

10. I want the Court to block the Act from going into effect to keep me and people like me safe.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 02, 2026.

José Hernandez