IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, *et al.*,

*Plaintiffs*,

v.

THE HONORABLE KATHY HOCHUL, in her official capacity as Governor of the State of New York, *et al.*,

*Defendants*.

Case No. ____________

**DECLARATION OF STEPHEN LIEBERMAN, SENIOR DIRECTOR, ADVOCACY & POLICY, PLAINTIFF UNITED SPINAL ASSOCIATION, IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

STEPHEN LIEBERMAN, pursuant to 28 U.S.C. § 1746 hereby declares as follows:

1. I am over 18 years of age and am otherwise competent to make this Declaration. I am submitting this Declaration in Support of Plaintiffs' Motion for Temporary Restraining Order in the above-captioned litigation. The evidence set out in the following Declaration is based on my own personal knowledge.

2. I am the Senior Director, Advocacy & Policy for Plaintiff United Spinal Association ("United Spinal"). I am a citizen of the State of Maryland, residing in Montgomery County, Maryland.

3. United Spinal is a national 501(c)(3) nonprofit membership organization that was founded by paralyzed veterans in 1946. United Spinal is run by a Board of Directors, the majority of whom are people with disabilities, and staff that includes people with spinal cord injuries. United Spinal is dedicated to empowering and advocating for people living with spinal cord injuries and diseases ("SCI/D") and all wheelchair users, including veterans, to obtain

greater independence and quality of life. United Spinal's core business activity is to advance opportunities, social equity, and disability rights for all people living with a spinal cord injury or disease. This includes work on issues such as increasing access to quality, affordable health care and independent living services, enhancing and reforming government benefit systems, and preserving social security benefits—including in New York.

4. United Spinal has approximately 70,000 members nationally, approximately 6,400 of whom reside in New York and access United Spinal's services. United Spinal serves New York through the Motion Project Foundation, Inc., the Rochester Chapter of United Spinal Association, and the United Spinal Association of Hudson Valley. United Spinal is also headquartered in New York.

5. United Spinal also works directly with specialized rehabilitation programs that serve New York residents, such as the wheelchair evaluation clinic at Northwell Health Rehabilitation Network, Southern Tier Independence Center in Binghamton, New York, the Adaptive Sports Foundation in Windham, New York, Burke Rehabilitation Hospital, Garnet Health Medical Center, Golisano Restorative Neurology & Rehabilitation Center, Helen Hayes Hospital, James J. Peters VA Medical Center, Rusk Rehabilitation at NYU Langone Medical Center, St Charles Hospital Rehabilitation Center, St. Mary's Hospital for Children, Strong Memorial Hospital of the University of Rochester, and Sunnyview Rehabilitation Hospital.

6. Spinal cord injuries are often unexpected and initially devastating to the newly injured and their family members. Newly injured members of United Spinal have faced and will continue to face significant possible challenges, including loss of some independence, depression, isolation, loss of self-confidence, and anxiety about what the future will bring. Many members have initially had suicidal thoughts. Many have also been depressed after injury and while living in the community. In response to these needs, United Spinal operates a peer mentor

support program that brings together people who have experienced living with spinal cord injuries with others who are navigating similar challenges. United Spinal's peer mentors provide information and support to members about their personal empowerment and suicide prevention.

7. While United Spinal helps its members live independently and effectively in the community, some members are unable to do so because of systemic problems in the healthcare and benefits systems, as well as discrimination based on disability. Many of United Spinal's members have directly experienced discrimination by medical professionals and others, including denial and delay of necessary medical services; by being told that their quality of life is poor and that if they had to live like them, they would kill themselves; as well as by being delayed or denied basic services and supports necessary for living at home with paralysis.

8. United Spinal works to reverse this medical discrimination by communicating with people with SCI/D about their medical rehabilitation and treatment options, publishing disability publications on disability etiquette, living with SCI/D, and the legal and medical rights of persons with SCI/D, hosting regular events to provide nutrition information, social time, help support groups, and combat medical discrimination by reinforcing the value of each individual life, regardless of their medical condition.

9. People with spinal cord injuries generally consider themselves to have a static disability—one that can be addressed with the right care, services, and supports. Some members have been told by doctors that their condition is "terminal," and that they may have a shortened amount of time to live. Despite these dire predictions, they are often proved wrong.

10. As a result of being perceived and labeled as terminally ill by their medical care providers, some of United Spinal's members will qualify for assisted suicide under the Medical Aid in Dying Act (the "Act") and are particularly vulnerable to being steered towards assisted suicide in a state of despair or depression. Upon information and belief, United Spinal members

in New York have discussed and considered accessing lethal medications and/or committing suicide by means of the Act. The Act places United Spinal's members at risk of dying by offering the option of assisted suicide during a period of treatable depression and difficulty. United Spinal brings this action on behalf of its members because the interests at stake are germane to United Spinal's purpose of empowering and advocating for people living with spinal cord injuries and diseases to obtain greater independence and a higher quality of life. Specifically, co-Plaintiffs Anita Cameron and José Hernandez are members of United Spinal who qualify under the Act.

11. United Spinal and its membership have been injured as a direct result of Defendants' actions and omissions alleged in the complaint. In addition to placing United Spinal members at risk of both discrimination and premature death by assisted suicide, Defendants' actions and omissions have injured the organization's core business activities, including empowering and advocating for people with spinal cord injuries to obtain a better quality of life and greater independence, communicating with people with spinal cord injuries so they better understand their legal and medical rights, and combating the belief that persons with disabilities are only a problem to be solved.

12. The passage of the Act is already harming United Spinal's ability to engage in its core business activities because it must instead address and counteract concerns about assisted suicide in New York, as well as advocate for members and constituents who are placed at imminent risk of harm by the passage of the Act and/or at risk of being steered toward utilizing assisted suicide once it goes into effect. United Spinal has already had to expend resources on education and outreach campaigns targeted at addressing assisted suicide in other states. Specifically, United Spinal's core business activities of education and advocacy for persons with SCI/D have been derailed because instead of engaging in its core business activities United

Spinal must address and counteract concerns about assisted suicide in New York. This includes, among other things: (i) counseling its members who feel dehumanized and consider ending their life due to the mental health difficulties that can follow a SCI/D diagnosis; (ii) publishing position statements opposing assisted suicide (including a message from United Spinal's CEO about the dangers of the practice in other states); (iii) holding 2 public information discussions to inform its members concerning assisted suicide laws and their impact on equality, dignity, and access to care for people with disabilities; (iv) and publishing approximately 10 articles on assisted suicide.

13. United Spinal's harm to its core business activities is not a mere diversion of resources. Rather, it is an existential threat to United Spinal and its members. United Spinal cannot effectively fulfill its core business activities and serve its membership base because the medical discrimination faced by its membership base under the Act is directly under attack.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2026.

Stephen Lieberman

Stephen Lieberman
Senior Director, Advocacy & Policy, United Spinal Association