**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, JOSÉ HERNANDEZ, ANITA CAMERON, SELF-INITIATED LIVING OPTIONS, INC., INDEPENDENT LIVING CENTER OF HUDSON VALLEY, REGIONAL CENTER FOR INDEPENDENT LIVING, UNITED SPINAL ASSOCIATION, NOT DEAD YET, NATIONAL COUNCIL ON INDEPENDENT LIVING, and INSTITUTE FOR PATIENTS' RIGHTS,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE HONORABLE KATHY HOCHUL, in her official capacity as Governor of the State of New York, NEW YORK STATE DEPARTMENT OF HEALTH, THE HONORABLE JAMES V. MCDONALD, M.D. in his official capacity as Commissioner of the New York State Department of Health, NEW YORK STATE BOARD FOR MEDICINE, THE HONORABLE AMIT M. SHELAT, D.O. in his official capacity as Chair of the New York State Board for Medicine, NEW YORK STATE OFFICE OF MENTAL HEALTH, THE HONORABLE ANN MARIE T. SULLIVAN, M.D. in her official capacity as Commissioner of the New York State Office of Mental Health,<br><br>*Defendants.* | Case No. 1:26-cv-03492 |

**<u>DECLARATION OF BENNY POLLAK</u>**

I, Benny Pollak, declare and state:

1. I am over 18 years of age and am otherwise competent to make this declaration based on my personal knowledge of the subject matter contained here. If called as a witness, I could and would competently testify to each of the following facts.

2. I am 67 years old and a New York state resident. I am quadriplegic and identify as a person living with a disability.

3. In 1980, I was in a car accident in Chile that caused a C5-C6 spinal cord injury. A few months after the accident, I came to New York for rehabilitative treatment.

4. I stayed in New York to finish my education at New York University, where I earned my Bachelor's and Master's in Computer Science and my Master of Business Administration. I have lived and worked in New York City ever since, and am a U.S. citizen.

5. I am still passionate about computer science after fifty years of working in the field and a self-identified technology loving geek. I am especially interested in AI and how it can be used to facilitate programming. You only need a brain and two fingers to program, and my condition has not limited my work at all.

6. I am the co-founder and sit on the Board of Directors of New York City Skeptics, an all-volunteer nonprofit that promotes critical thinking and science education. I also co-created and produced a podcast, Rationally Speaking, from my studio in Greenwich Village for over five years. The podcast explored important issues and interviewed scientists, journalists, and other thinkers such as Neil deGrasse Tyson. It stopped production in 2021.

7. I have used a wheelchair since my accident in 1980. My legs and torso are paralyzed, though I have use of my shoulders, arms, and limited use of my hands and fingers. I

use an adapted vehicle to drive around New York City, given that the subway system is generally inaccessible to people who use wheelchairs.

8. I live an independent life. As I age, I find that I need help with some morning and evening activities. I also have shifted to using an electric wheelchair most of the time. I value independence and autonomy, and I welcome any adaptations I need to continue to live my life to the fullest.

9. I travel to Chile about three times a year to visit my 96-year-old mother. Although I used to make this trip on my own, I now require assistance to travel. The hardest part of traveling with a disability is navigating airports, airplanes, and other places that have not prioritized accessibility. This has only gotten more difficult to do with age.

10. Based on my understanding of the New York Medical Aid in Dying ("MAID") Act, living with a disability does not automatically or presumptively qualify me for medical aid in dying. If I ever wanted to access medical aid in dying, I know that I will need to have a terminal prognosis of six months or less. I also understand that the MAID Act contains explicit language that prevents me from qualifying for medical aid in dying based solely on age or disability.

11. It offends and infuriates me that this lawsuit purports to represent all people who live their lives with disabilities, as if we all think, feel, and believe the same thing. This lawsuit is predicated on the idea that people with disabilities are "weaker" or need more protection than others. This offensive idea stems from the mistaken belief that a life with a disability is somehow less worth living.

12. Many people believe they would rather be dead than live like me, but they do not understand my lived experience. I live a very happy and full life. I do not want to die. And I do

not need anybody—other than myself in collaboration with my healthcare providers—deciding what medical care I should or should not use.

13. I want autonomy, independence, and the ability to decide what end-of-life care works best for me, and that is what the MAID Act provides. If I have a terminal illness, I want the agency and authority to decide if the option of medical aid in dying is right for me. I am participating in this lawsuit to protect the MAID Act, to preserve my end-of-life autonomy, and to contradict and challenge the paternalistic perspective that I cannot make my own informed decisions because I live with a disability and use a wheelchair.

14. I am a strong and outspoken advocate for the option of medical aid in dying. I volunteered with the Compassion & Choices campaign to pass the MAID Act to ensure that the perspectives of people who live with disabilities are part of the discussion.

15. I find the argument that I am more susceptible to coercion because I live with a disability insulting. Multiple procedural requirements are built into the MAID Act. If I qualify for and decide to pursue medical aid in dying in the final months of my life, my decision would be entirely voluntary and mine alone. I am not concerned that I could or would be coerced.

16. I have the right to make my own healthcare decisions. The Americans with Disabilities Act does not protect me, it empowers me —there is a difference. I need autonomy and agency, not to be patronized. The MAID Act gives me the right to exercise autonomy and agency over the end of my life if and when I qualify.

17. Knowing the option of medical aid in dying exists gives me space to live my life without thinking about some future with unbearable suffering from a terminal illness. It angers me that my right to decide what is best for me based on my individual circumstances may be taken away if the MAID Act does not go into effect as planned.

18. All New Yorkers deserve access to a full range of healthcare options, regardless of whether or not they live with a disability. Denying qualified individuals access to medical aid in dying based on offensive assumptions about the vulnerability of people living with disabilities is both harmful and offensive to those of us living with disabilities. Preventing access to medical aid in dying for qualified individuals would deprive people with terminal illnesses of their autonomy and ability to make end-of-life healthcare decisions consistent with their own values, morals, and beliefs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed by me on this 18 day of June, 2026.

Benny Pollak