**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, JOSÉ HERNANDEZ, ANITA CAMERON, SELF-INITIATED LIVING OPTIONS, INC., INDEPENDENT LIVING CENTER OF HUDSON VALLEY, REGIONAL CENTER FOR INDEPENDENT LIVING, UNITED SPINAL ASSOCIATION, NOT DEAD YET, NATIONAL COUNCIL ON INDEPENDENT LIVING, and INSTITUTE FOR PATIENTS' RIGHTS,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE HONORABLE KATHY HOCHUL, in her official capacity as Governor of the State of New York, NEW YORK STATE DEPARTMENT OF HEALTH, THE HONORABLE JAMES V. MCDONALD, M.D. in his official capacity as Commissioner of the New York State Department of Health, NEW YORK STATE BOARD FOR MEDICINE, THE HONORABLE AMIT M. SHELAT, D.O. in his official capacity as Chair of the New York State Board for Medicine, NEW YORK STATE OFFICE OF MENTAL HEALTH, THE HONORABLE ANN MARIE T. SULLIVAN, M.D. in her official capacity as Commissioner of the New York State Office of Mental Health,<br><br>*Defendants.* | Case No. 1:26-cv-03492 |

**<u>DECLARATION OF STACEY GIBSON</u>**

I, Stacey Gibson, declare and state:

1. I am over 18 years of age and am otherwise competent to make this declaration based on my personal knowledge of the subject matter contained herein and, if called as a witness, could and would competently testify to each of the following facts.

2. I am 74 years old, a New York resident, and I have been diagnosed with multiple cancers including breast cancer, lung cancer, and, most recently, B-cell lymphoma. Thankfully, both my breast and lung cancers are in remission. Unfortunately, my lymphoma is incurable. B-cell lymphoma is a common type of non-Hodgkin's lymphoma, a cancer of the lymph system. I am currently under the "watch and wait" protocol, meaning that I will not begin treatment for the lymphoma until I show symptoms or my blood tests indicate that I need to begin treatment. There is no cure for this type of cancer, but there are treatments that can manage the symptoms, such as immunotherapy, chemotherapy, bone marrow transplants, and radiation.

3. I have lived in New York my entire life, except while attending American University for three years. However, I received my undergraduate degree in sociology from Pace University which is in New York. I spent most of my career with Bristol MYERS Squibb, beginning as a secretary and eventually earning my M.B.A. and working in human resources.

4. Since retiring in 2009, I have spent my time working part time and volunteering with non-profit organizations focused on mental health and substance use. I also volunteer with the Make-a-Wish Foundation. I have also been politically active my entire life, regularly attending protests and communicating with my representatives about topics I care about. In my

free time, I love exercising, reading, traveling, and spending time with my family and my dog, Bernie.

5. I am a widow—my husband Sid died twelve years ago—and I have one step-daughter, and a grandson and granddaughter with whom I am very close.

6. My husband Sid of 36 years, was the love of my life. My experience with Sid's death from spinocerebellar ataxia inspired me to start advocating for the passage of New York's Medical Aid in Dying Act ("MAID Act").

7. Spinocerebellar ataxia is a progressively degenerative neurological disease that is similar to amyotrophic lateral sclerosis (commonly known as ALS). Spinocerebellar ataxia is terminal and there are no known treatments.

8. Starting in 2011, Sid began to lose his lower limb function. He soon needed to use a wheelchair and we installed a stair lift in our home. Because of how rare spinocerebellar ataxia is, his physicians were unable to provide a definitive diagnosis for Sid until 2012. Although Sid's prognosis was poor, it was a relief to receive a formal diagnosis because we finally had a name for what was happening to him.

9. As the disease progressed, Sid began to lose much of his ability to breathe, speak, and swallow. He would gag frequently, which was incredibly distressing for both of us.

10. As his death was approaching, Sid suffered greatly. In 2014, Sid chose to voluntarily stop eating and drinking ("VSED") to have some control over the timing of his death.

Sid's death was difficult for him. While Sid was dying, he asked me "to figure out a better way for people" to die.

11. Sid died at home in May 2014.

12. In 2015, I participated in the very first lobby day for New York's MAID Act. Over the last decade, as a tribute to Sid, I have spent lots of time writing letters to the editor, calling State Representative Dana Levenberg and State Senator Rob Rolison's offices, meeting with New York State Assembly members and Senators throughout the state, and lobbying in support of the MAID Act in Albany consistently for years. I became part of the group known affectionately as "the yellow shirts," a group of dedicated advocates who showed up constantly in Albany to make our voices heard and who worked for years to pass the MAID Act in New York.

13. I am proud to share Sid's story to advocate for the MAID Act, not only so that it is available to me if and when I choose to use it, but also so that it is available to other mentally competent adults who have six months or less to live and the ability to self-administer the medication. Medical aid in dying was not a healthcare option available to Sid; it is important to me that qualified New Yorkers have access to this option so they can choose not to endure the kind of suffering that Sid did at the end of his life.

14. I also want the option to choose medical aid in dying if I qualify. Although my lymphoma is not currently aggressive, I have had multiple cancer diagnoses, and I know it is likely that my lymphoma or another cancer will relapse or advance and kill me. I do not want the

MAID Act to be enjoined, which would deprive me of access to this important healthcare option if and when I am eligible.

15. I feel strongly that medical aid in dying as set out in the MAID Act is one of several end-of-life healthcare options a qualified terminally-ill person should be able to utilize in conjunction with other end-of-life options, such as hospice and palliative care. I am not sure whether I will choose to use medical aid in dying, but its existence as an option is a comfort to me now.

16. Based on my understanding of the MAID Act, my disease does not automatically or presumptively qualify me for medical aid in dying. I know that I will need to have a terminal prognosis of six months in order to begin the process of obtaining a prescription for medical aid in dying with my physician. I understand that the MAID Act contains explicit language that prevents me from being qualified for medical aid in dying based solely on age or disability.

17. I do not fear that I will be coerced into obtaining a prescription from my trusted healthcare provider. Numerous safeguards are built into the law. My decision to pursue medical aid in dying in the final months of my life would be entirely voluntary and my decision alone.

18. I have experienced incredible peace of mind since the MAID Act was signed into law in February 2026, knowing that I will be able to access this healthcare option and have the medication available to me if or when I qualify, even if I ultimately decide not to use it. The knowledge that the MAID Act affords me the option to control the manner and timing of my inevitable death has allowed me to fully live my life without fear of death and the dying process.

19. I have reviewed the complaint in this case, and am deeply concerned that this important healthcare option may be taken away from me and other people with terminal diagnoses like Sid.

20. Because of this lawsuit, I am worried the option of medical aid in dying will not be available for me if or when I choose to use it. If the MAID Act does not go into effect as planned in August 2026, the thoughtful and emotional end-of-life planning I have discussed with my medical team and my family will be compromised. I will again become more focused on the uncertainties of my death than the joy of living whatever time I have left to the fullest.

21. Terminally ill New Yorkers should not have to feel powerless and without access to a full range of safe healthcare options. Blocking access to medical aid in dying will deprive me and many like me of our autonomy and ability to make our own end-of-life decisions in accordance with our values, morals, and beliefs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed by me on this 18 day of June, 2026.

Stacey Gibson
Stacey Gibson