**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, JOSÉ HERNANDEZ, ANITA CAMERON, SELF-INITIATED LIVING OPTIONS, INC., INDEPENDENT LIVING CENTER OF HUDSON VALLEY, REGIONAL CENTER FOR INDEPENDENT LIVING, UNITED SPINAL ASSOCIATION, NOT DEAD YET, NATIONAL COUNCIL ON INDEPENDENT LIVING, and INSTITUTE FOR PATIENTS' RIGHTS,

*Plaintiffs,*

v.

THE HONORABLE KATHY HOCHUL, in her official capacity as Governor of the State of New York, NEW YORK STATE DEPARTMENT OF HEALTH, THE HONORABLE JAMES V. MCDONALD, M.D. in his official capacity as Commissioner of the New York State Department of Health, NEW YORK STATE BOARD FOR MEDICINE, THE HONORABLE AMIT M. SHELAT, D.O. in his official capacity as Chair of the New York State Board for Medicine, NEW YORK STATE OFFICE OF MENTAL HEALTH, THE HONORABLE ANN MARIE T. SULLIVAN, M.D. in her official capacity as Commissioner of the New York State Office of Mental Health,

*Defendants.*

Case No. 1:26-cv-03492

**DECLARATION OF NANCY MURPHY**

I, Nancy Murphy, declare and state:

1. I am over 18 years of age and am otherwise competent to make this declaration based on my personal knowledge of the subject matter contained herein and, if called as a witness, could and would competently testify to each of the following facts.

2. I am 87 years old and a New York state resident. I am currently in remission from triple-negative breast cancer (TNBC).

3. My husband and I have lived in the Adirondacks for the past 30 years after retiring from our careers in public service in Washington, D.C. I dedicated my life and career to volunteering and public service. After working for the Philadelphia Commission on Human Relation as fair housing director in the 1960s, I began my 37-year career with the U.S. Department of Housing and Urban Development, where much of my work included the creation and management of the Section 8 voucher program which currently provides housing assistance to more than 2 million low-income families.

4. I continue to be active in my community and volunteer work in my retirement. In addition to my advocacy of Medical Aid in Dying (MAID), I am on the board of Adirondack Voters for Change, which seeks change in the issues of climate, immigration, voter education, political transparency, and abortion access, as well as MAID. I am also on the board of Historic Saranac Lake, which works to preserve Saranac Lake history and architecture through a museum, oral history, and educational activities. I have been a hospice volunteer off and on for many years. I worship with the Saranac Lake Society of Friends (Quakers).

5. In March 2025, I was diagnosed with TNBC. Since my diagnosis, I have undergone surgery, six months of chemotherapy, and a month of daily radiation therapy. My most recent PET scan in January 2026 found no signs of cancer, confirming that my treatment

was successful. While my family and I are extremely pleased that my treatment is concluded and my scans are clear, I understand that TNBC is extremely aggressive and there is a more than 25% chance of recurrence.

6. My TNBC diagnosis changed my life dramatically. The treatment, which lasted for a year, caused me extreme fatigue. Before my diagnosis, I enjoyed gardening, aqua aerobics, walking with my dog, and multiple household tasks. Gradually, throughout the treatment, I became extremely fatigued and spent much of my time reading and staying in contact with friends by phone and email. I lost a lot of strength and stamina.

7. Now that I am done with treatment, I hope to regain the mobility and strength I had before by exercise, healthy eating and adequate sleep. It is likely that I will not totally regain my energy until the end of this year.

8. Predating my TNBC diagnosis, I have also been living with a disability related to degenerative arthritis in the lumbar section of my spine that results in pressure on the nerves in my lower back for about seven years which causes me pain standing and walking. Staying physically active, including exercise and aqua aerobics, is the best way to manage the pain. I use a handicap sticker on my car because I struggle with pain after about 10 minutes of walking or standing.

9. I have been a hospice volunteer for many years and have witnessed death and dying. Because of my work as a hospice volunteer, I understand the suffering of a long, lingering death and want to avoid that. Having the option of MAID will be a comfort, whether or not I end up using it.

10. I became an advocate for New York's Medical Aid in Dying Act (the Act) after my sister Joan Kline's use of the Vermont act to end her life from ovarian cancer in 2016. Joan

lived in Vermont when she was given a prognosis of months or possibly just weeks to live. Joan had been a member of the Hemlock Society since her early adulthood and knew exactly what she wanted at the end of life. On the day of her diagnosis, she requested the prescription for MAID from her physician, just in case she might need it. Her cancer gradually took over her body until she was in a hospital bed in her living room, unable to move or help herself in any way. She decided on her final day and was surrounded by her loved ones, who toasted her and told her how much she had meant to them and how much they loved her. She said she loved us and that she was satisfied and content with her life: all the places she had been, all the people she had known and things she had done. It was a profound, beautiful, and meaningful experience for me and my family. Everyone should have the option to die the way Joan did.

11. I am a vocal advocate for the option of MAID and have spoken at a press conference in the State House in Albany, in various meetings in Saranac Lake, and, during Covid, by Zoom with legislators and their staff two dozen times, telling my sister's story. I led the Adirondack Voters for Change efforts to get the law passed, coordinating many trips to Albany to lobby, and urging letters, emails and phone calls to legislators and the Governor throughout the process. Should my cancer return and become terminal, medical aid in dying is a healthcare option I want available for myself. Just like my sister, I want to be in charge of when I die, where I die, and with whom I die. I want to be surrounded by my loved ones when I die, just like Joan was surrounded by people who loved her. Medical aid in dying gives me that choice.

12. Should my cancer return and become terminal, MAID is a healthcare option I want available for myself. Just like my sister, I want to be in charge of when I die, where I die, and with whom I die. I want to be surrounded by my loved ones when I die, just like Joan was surrounded by people who loved her. MAID will give me that choice. Whether or not I, or

anyone else, decides to use MAID is a personal choice. The Act allows a terminally ill person with a less than six-month prognosis to ask for the medication. Each step in the process of obtaining and using MAID is a personal choice. Those who do not want to use the option should not prevent other people from accessing it.

13. Because of this lawsuit, I am concerned that the option of medical aid in dying will not be available for me if or when I choose to use it. If the Act does not go into effect as planned in August 2026, the thoughtful and emotional end-of-life planning I have discussed with my family will be compromised. I will again become more focused on the uncertainties of my death than living my life.

14. All New Yorkers deserve access to a full range of healthcare options, which the Act enables. Denying access to medical aid in dying to qualified New Yorkers deprives us of our autonomy and ability to make our own end-of-life decisions in accordance with our values, morals, and beliefs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed by me on this 18th day of June, 2026.

Nancy S. M

Nancy Murphy