IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

BROOKLYN CENTER FOR INDEPENDENCE OF
THE DISABLED, JOSÉ HERNANDEZ, ANITA
CAMERON, SELF-INITIATED LIVING
OPTIONS, INC., INDEPENDENT LIVING
CENTER OF HUDSON VALLEY, REGIONAL
CENTER FOR INDEPENDENT LIVING, NOT
DEAD YET, UNITED SPINAL ASSOCIATION,
NATIONAL COUNCIL ON INDEPENDENT
LIVING, and INSTITUTE FOR PATIENTS'
RIGHTS,

          *Plaintiffs*,

       v.

THE HONORABLE KATHY HOCHUL, in her
official capacity as Governor of the State of New
York, NEW YORK STATE DEPARTMENT OF
HEALTH, THE HONORABLE JAMES V.
MCDONALD, M.D. in his official capacity as
Commissioner of the New York State Department of
Health, NEW YORK STATE BOARD FOR
MEDICINE, THE HONORABLE AMIT M.
SHELAT, D.O. in his official capacity as Chair of
the New York State Board for Medicine, NEW
YORK STATE OFFICE OF MENTAL HEALTH,
THE HONORABLE ANN MARIE T. SULLIVAN,
M.D. in her official capacity as Commissioner of the
New York State Office of Mental Health,

          *Defendants*.

Case No.1:26-cv-03492-OEM-JAM

---

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
MOTION TO INTERVENE OF JEREMY BOAL, IRIS DUDMAN, STACEY GIBSON,
<u>ANNE GURNETT BANDER, NANCY MURPHY, AND BENNY POLLAK</u>**

**ROSEN BIEN GALVAN & GRUNFELD LLP**
101 Mission Street, 6th Floor
San Francisco, California 94105

**HALLORAN FARKAS + KITTILA LLP**
600 Third Avenue, 2d Floor
New York, New York 10016

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS .....................................................................1

PRELIMINARY STATEMENT ...................................................................................................2

ARGUMENT.................................................................................................................................4

      I.      The Proposed Intervenors Cannot Intervene as of Right. .......................................4

            A.  The Proposed Intervenors Fail Given the Presumption of Adequate
                Representation.............................................................................................5

            B.  The Proposed Intervenors Cannot Establish the Other Elements .....................7

      II.     The Court Must Deny Permissive Intervention ........................................................8

CONCLUSION..............................................................................................................................9

CERTIFICATION OF WORD COUNT COMPLIANCE .............................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.H. by E.H. v. New York State Dep't of Health*,
   147 F.4th 270 (2d Cir. 2025), *cert. denied sub nom. Disability Rts. New York v. New York State Dep't of Health*, 224 L. Ed. 2d 176 (Mar. 9, 2026)....................................7

*Commodity Futures Trading Comm'n v. Acluche*,
   2026 WL 707535 (2d Cir. Mar. 13, 2026)............................................................................4

*Curran v. Meyer*,
   C.A. No. 25-1475-GBW (D. Del.) (ECF #38).....................................................................4

*Curran v. Meyer*,
   Case No. 26-1001 (3d Cir.) .................................................................................................4

*Herdman v. Town of Angelica*,
   163 F.R.D. 180 (W.D.N.Y. 1995)........................................................................................5

*Natural Resources Defense Council, Inc. v. New York State Department of Environmental Conservation*,
   834 F.2d 60 (2d Cir.1987)...................................................................................................5

*Paradise v. Prescott*,
   580 F. Supp. 171 (M.D. Ala. 1983), *Paradise v. Prescott*, 767 F.2d 1514 (11th Cir. 1985), *aff'd sub nom. United States v. Paradise*, 480 U.S. 149 (1987).......................9

*United Spinal Assoc. v. State of California*,
   No. 24-02751 (9th Cir.) (ECF #11) .....................................................................................4

*United States v. Hooker Chemicals & Plastics Corp.*,
   749 F.2d 968 (2d Cir. 1984)................................................................................................2

**Federal Constitution, Statutes and Rules**

Fed. R. Civ. P. 24........................................................................................... *passim*

**New York Constitution and Statutes**

N.Y. Public Health Law § 2899-d, et seq. ............................................................ *passim*

Plaintiffs respectfully submit this Answering Brief in opposition to the Motion to Intervene as Defendants of Jeremy Boal, Iris Dudman, Stacey Gibson, Anne Gurnett Bander, Nancy Murphy, and Benny Pollak (ECF #20) (the "Motion") and opening brief submitted in support of the Motion (ECF #20-1) (the "Opening Brief" or "Opening Br."). For the reasons stated herein, the Motion must be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

On June 11, 2026, plaintiffs Brooklyn Center for Independence of the Disabled, José Hernandez, Anita Cameron, Self-Initiated Living Options, Inc., Independent Living Center of the Hudson Valley, Regional Center for Independent Living, Not Dead Yet, United Spinal Association, Not Dead Yet, National Council on Independent Living, and Institute for Patients' Rights (collectively, "Plaintiffs") sued Governor Kathy Hochul, the New York State Department of Health, Commissioner James V. McDonald, M.D. of the New York State Department of Health, the New York State Board for Medicine, Chair Amit M. Shelat, D.O. of the New York State Board for Medicine, the New York State Office of Mental Health, and Commissioner Ann Marie T. Sullivan, M.D. of the New York State Office of Mental Health (collectively, "Defendants") to enjoin implementation and enforcement of New York's Medical Aid in Dying Act, N.Y. Public Health Law § 2899-d, *et seq*. (the "Act"). ECF #1. The same day, Plaintiffs filed a Motion for a Temporary Restraining Order (ECF #2, the "TRO Motion").

On June 15, 2026, this Court entered an order to show cause, denying entry of a TRO on an *ex parte* basis, but instead ordering Defendants to submit answering papers to Plaintiffs' request for a preliminary injunction. *See* Order to Show Cause, dated June 15, 2026. Plaintiffs caused the pleadings to be personally served on the Defendants on June 16, 2026, as required by the Court's Order to Show Cause. *See* ECF #8-15. Defendants' response to Plaintiffs' request for preliminary

1

injunctive relief was filed on June 23, 2026. ECF #23. The Court has scheduled a hearing on Plaintiffs' request for injunctive relief for June 25, 2026, at 11:30 a.m. at the United States District Court for the Eastern District of New York in Brooklyn, New York. *See* Order to Show Cause.

On June 22, 2026, Jeremy Boal, Iris Dudman, Stacey Gibson, Anne Gurnett Bander, Nancy Murphy, and Benny Pollak (together, the "Proposed Intervenors") filed the Motion. ECF #20. Together with the Motion, Proposed Intervenors filed the Opening Brief and a [Proposed] Brief of Intervenors in Opposition to Plaintiffs' Motion for Temporary Restraining Order (ECF #20-9, the "Proposed TRO Opposition"). This is Plaintiffs' answering brief in opposition to the Motion.

## PRELIMINARY STATEMENT

On August 5, 2026, doctors will have the ability to begin writing prescriptions to end the lives of New Yorkers under the Act. The Proposed Intervenors seek to oppose Plaintiffs' request for preliminary injunctive relief and to remain in the case as co-Defendants. *See* Opening Br. at 2.

The Proposed Intervenors seek to rely on Fed. R. Civ. P. 24, but that rule does not grant them any basis to intervene. The Attorney General of the State of New York has appeared and is vigorously defending Defendants' interests in this case. As such, the Proposed Intervenors cannot satisfy the Second Circuit's standard that such representation is "inadequate." *See United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 987 (2d Cir. 1984). Accordingly, the Court must deny the Motion.

Ignoring this standard, the Proposed Intervenors claim that they should be able to intervene because the government attorneys may "not need to prioritize urgency in their defense of this action." Opening Br. at 14. The Proposed Intervenors' argument is already belied by the State's defense that it has put forward on an expedited schedule. *See* ECF #22. In reality, the Proposed

2

Intervenors seek to intervene because they want to shift the focus and rehash the arguments made before the New York Legislature to pass the Act and argue in favor of the law.  Plaintiffs have pled that the Act is discriminatory.  The Proposed Intervenors, however, do not see the law as discriminatory.  *See, e.g.*, Declaration of Jeremy Boal ("Boal Dec.") (D.I. 20-2) at ¶ 17 ("Based on my understanding of the MAID Act, my disability does not automatically or presumptively qualify me for medical aid in dying"); Declaration of Benny Pollak ("Pollak Dec.") (D.I. 20-3) at ¶ 10 (same); Declaration of Iris Dudman ("Dudman Dec.") (D.I. 20-5) at ¶ 16 (same); Declaration of Stacey Gibson ("Gibson Dec.") (D.I. 20-6) at ¶ 16 (same).  To them, this is another opportunity to argue policy, not the law.

That is not the purpose of intervention.  The Federal Rules of Civil Procedure do not grant a right to intervene to any person who wishes to make their political opinion heard.  Political debates are meant for the halls of our legislatures and our town squares, not our courts.  The Court must deny the Proposed Intervenors' Motion.  They can seek vindication for their policy goals through their representatives, not this Court.  The New York Legislature adopted a law that violates both federal statutory law and the U.S. and New York State Constitutions.  This case provides for judicial review of the law under Federal statutory law and to assess its constitutionality.  It is not the proper forum to rehash the debates that led to its passage.

Intervention is not appropriate.  The Proposed Intervenors share the same interest as Defendants:  defense of the Act.  More importantly, the Proposed Intervenors are not the proper defendants.  Plaintiffs have no actionable gripes with the Proposed Intervenors:  the Proposed Intervenors are not charged with implementing a medical scheme that discriminates against Plaintiffs.  That is a key focus of this litigation.

3

The law in the Second Circuit is clear:  the Proposed Intervenors' efforts to hijack the case and refocus the discussion away from the claims of discrimination and to the policy merits of assisted suicide cannot be permitted.  The Motion must be denied.[1]

## ARGUMENT

**I.     The Proposed Intervenors Cannot Intervene as of Right.**

A party may intervene as of right when the potential intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  More specifically, a potential intervenor must satisfy four criteria:  (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.  *Commodity Futures Trading Comm'n v. Acluche*, 2026 WL 707535 (2d Cir. Mar. 13, 2026).  The Proposed Intervenors cannot satisfy these elements.

---

[1] The Proposed Intervenors are represented by counsel with The End-of-Life Justice Center at Compassion & Choices.  *See* ECF #21 (Motion for admission *pro hac vice*).  Compassion & Choices Action Network (the client of The End-of-Life Justice Center at Compassion & Choices) has used this same strategy again and again in cases around the nation challenging assisted suicide laws.  *See Curran v. Meyer*, C.A. No. 25-1475-GBW (D. Del.) (ECF #38) (the "Delaware Action") (Motion to Intervene by Compassion & Choices); *Curran v. Meyer*, Case No. 26-1001 (3d Cir.) (the "Third Circuit Appeal") (Motion for Leave to Intervene by Compassion & Choices); *United Spinal Assoc. v. State of California*, No. 24-02751 (9th Cir.) (ECF #11) (the "Ninth Circuit Appeal") (Motion to Intervene by Compassion & Choices).  The Court in the Delaware Action denied the Motion to Intervene as moot.  *See* Delaware Action at ECF #53 at ¶ 3.  The Third Circuit in the Third Circuit Appeal denied the Motion for Leave to Intervene.  *See* Third Circuit Appeal at ECF #42.  The Ninth Circuit also denied the Motion to Intervene.  Ninth Circuit Appeal at ECF #20.

**A. The Proposed Intervenors Fail Given the Presumption of Adequate Representation.**

Defendants are *more than* adequately representing the Proposed Intervenors' interest. Where, like here, one party is a government entity charged by law in representing a proposed intervenor's interest, "it is proper to require a ***strong showing*** of inadequate representation before permitting intervenors to disrupt the government's exclusive control over the course of its litigation." *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 987 (2d Cir. 1984) (emphasis added) (citing 7A Wright & Miller, Federal Practice and Procedure § 1909 at 524-25, 528-29 (1972) (if "there is a party charged by law with representing [a proposed intervenor's] interest, then a compelling showing should be required to demonstrate why this representation is not adequate," and a "very compelling showing" ought to be required "when a governmental body is the named party")).

When a governmental entity is "defending the legality of its actions or the validity of its laws or regulations, courts should examine both (1) whether the government entity has demonstrated the motivation to litigate vigorously and to present all colorable contentions, and (2) the capacity of that entity to defend its own interests and those of the prospective intervenor." *Herdman v. Town of Angelica*, 163 F.R.D. 180, 190 (W.D.N.Y. 1995) (interpreting *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984) and *Natural Resources Defense Council, Inc. v. New York State Department of Environmental Conservation*, 834 F.2d 60 (2d Cir. 1987)).

The Proposed Intervenors fail on both factors. First, Defendants have responded both timely and quickly in the 12 days since the filing of the Complaint and the TRO Motion, and Defendants have prepared a full brief in opposition to the TRO Motion. Defendants, represented by the New York Office of the Attorney General, filed a 25-page opposition to the Plaintiffs'

5

Motion, covering challenges to standing and the sufficiency of the pleadings. Defendants are vigorously defending the Act.

Second, the Proposed Intervenors do not—and cannot—argue that the State of New York lacks the capacity to defend its own interests and those of the prospective intervenor. The Proposed Intervenors merely suggest that their personal life experiences or experiences in lobbying for assisted suicide legislation undercut Defendants' ability to litigate this case or make their interest distinct. *See* Opening Br. at 14. Not so. Although the Proposed Intervenors' conditions might give them a personal perspective on assisted suicide, their interest is aligned with Defendants' interest. Along these lines, Plaintiffs are unaware of any authority, and Proposed Intervenors point to none, standing for the proposition that a putative difference in legal strategy creates any basis to intervene. To hold otherwise would render the adequate representation requirement a nullity. Indeed, allowing intervention because of a difference in strategy would allow the Proposed Intervenors to usurp Defendants' control of their defense.

Further, to the extent that the Proposed Intervenor's Opening Brief may be read as arguing that Defendants are unable to defend their own or the Proposed Intervenors' interests, Plaintiffs reject any suggestion that the New York Office of the Attorney General is incapable of or unmotivated to properly defend this action. There is no legal authority for the Proposed Intervenors' premise that government attorneys are incapable of diligently prosecuting a suit solely due to their status as government attorneys, regardless of whether those attorneys are "relative newcomers" in the policy area of assisted suicide.[2] Opening Br. at 14.

---

[2] Proposed Intervenors claim, "Because the State Defendants do not face the immediate, personal deprivation of rights that Proposed Intervenors face, the State Defendants may also not need to prioritize urgency in their defense of this action in the way that Proposed Intervenors would." Opening Br. at 14. In fact, the briefing submitted by Defendants was robust. ECF #22. Defendants are being represented by experienced counsel. The Court can be confident that the appropriate

6

**B.  The Proposed Intervenors Cannot Establish the Other Elements.**

With respect to the other elements, the Proposed Intervenors also fall short.  First, timeliness of a motion to intervene is determined from all circumstances, including "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *A.H. by E.H. v. New York State Dep't of Health*, 147 F.4th 270, 281 (2d Cir. 2025), *cert. denied sub nom. Disability Rts. New York v. New York State Dep't of Health*, 224 L. Ed. 2d 176 (Mar. 9, 2026).

Admittedly, the Proposed Intervenors have moved to intervene early in this case.  They have moved to intervene; however, while the case is on an expedited schedule with a pending motion for preliminary injunctive relief pending and scheduled to be heard by the Court on June 25, 2026.  Critical with respect to timeliness, the Proposed Intervenors seek to intervene in the case as *defendants*.  The question becomes how their involvement as *defendants*—against whom no claims have been made—could be addressed without a wholesale reworking of the pleadings in this case.  Proposed Intervenors want this case to be about whether assisted suicide should remain viable in New York:  full stop.  As noted above, they do not believe that there is any discrimination. *See* discussion, *supra* (quoting from Boal Dec, Pollak Dec., Dudman Dec., Gibson Dec.).

The claims pled in the Complaint (ECF #1) focus on violations of the ADA (Count I), the Rehabilitation Act (Count II), the Affordable Care Act (Count III), the 14th Amendment of the U.S. Constitution (Counts IV and V), and Article I, Sections 6 and 11 of the New York State

---

arguments will be made, and any suggestion to the contrary is poor form.  The Proposed Intervenors do not have a monopoly interest on how the Act is viewed, litigated, implemented, or enforced.

Constitution (Counts IV and V). In the context of the asserted claims, the Proposed Intervenors' role as defendants in the case is unworkable. This case is not about the policy merits of assisted suicide, but rather, about whether the statute as adopted violates Plaintiffs' rights.

Whether couched as a timeliness objection (the first element), or quite simply as a question of the sufficiency of the Proposed Intervenor's claimed interest (the second element), Plaintiffs see no way that Proposed Intervenors' intervention would not prejudice Plaintiffs (the third element) by derailing the case as a whole, or at least the expedited nature of the requested relief— that is, enjoining implementation and enforcement a facially discriminatory law. The fact that the Proposed Intervenors are content to have a discriminatory law remain viable does not give a party a right to intervene. No amount of comfort that the Proposed Intervenors may express with the current state of the law will save a law that is facially discriminatory or is otherwise unconstitutional.

## II.    The Court Must Deny Permissive Intervention.

A timely motion for permissive intervention may be granted by the Court only when the applying intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). When considering a motion for permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Permissive intervention is a matter of the Court's discretion. Plaintiffs respectfully submit that the Court cannot permit Proposed Intervenors to intervene because doing so would cause both undue delay and prejudice. Proposed Intervenors' position—that assisted suicide should be available in the State of New York—is being addressed by Defendants. Allowing the Proposed Intervenors to intervene would lead to redundant arguments while distracting the Court from the

8

issue of the discriminatory effect of the Act.  Granting a permissive motion would permit a party that benefits from a discriminatory government regime to enter an anti-discrimination suit to pursue their own interest in the discriminatory government regime.  Plaintiffs are aware of only one prior case that has permitted such a party to intervene.  *See Paradise v. Prescott*, 580 F. Supp. 171, 175 (M.D. Ala. 1983) (discussing a separate order permitting four white applicants to intervene on a *prospective* basis regarding an order reversing a discriminatory scheme from which white applicants benefitted), *Paradise v. Prescott*, 767 F.2d 1514, 1522 (11th Cir. 1985) (did not consider the motion to intervene), *aff'd sub nom. United States v. Paradise*, 480 U.S. 149, 161 (1987) (did not consider the motion to intervene).  The Court must deny permissive intervention.

**CONCLUSION**

For the reasons stated herein, the Court must deny the Proposed Intervenors' Motion.

Date: June 24, 2026

| | |
|---|---|
| *Of Counsel:* | /s/ *Theodore A. Kittila* |
| | Theodore A. Kittila |
| Ernest J. Galvan* | Jeffrey M. Greilsheimer |
| Michael W. Bien* | **HALLORAN FARKAS + KITTILA LLP** |
| **ROSEN BIEN GALVAN & GRUNFELD LLP** | 600 Third Avenue, 2d Floor |
| 101 Mission Street, Sixth Floor | New York, New York  10016 |
| San Francisco, CA 94105 | Phone:  (302) 257-2025 |
| Tel:  (415) 433-6830 | Fax:  (302) 257-2019 |
| Fax:  (415) 433-7104 | Email:  tk@hfk.law \| jg@hfk.law |
| Email: egalvan@rbgg.com | |
|        mbien@rbgg.com | -and- |
| | |
| *Admitted *pro hac vice* | William E. Green, Jr.** |
| **Motion *pro hac vice* forthcoming | Timothy S. Spangler, III** |
| | 5722 Kennett Pike |
| | Wilmington, Delaware 19807 |
| | Tel:  (302) 257-2011 |
| | Fax:  (302) 257-2019 |
| | Email:  wg@hfk.law \| ts@hfk.law |
| | |
| | *Counsel for Plaintiff* |

9

## CERTIFICATION OF WORD COUNT COMPLIANCE

I hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law contains 2,771 words (excluding the caption, table of contents, table of authorities, and signature block), and that I have relied upon Microsoft Word's word count for purposes of this certification.

/s/ Theodore A. Kittila
Theodore A. Kittila