HALLORAN FARKAS + KITTILA LLP

**Theodore A. Kittila**
Halloran Farkas + Kittila LLP
5722 Kennett Pike
Wilmington, Delaware 19807

p: (302) 252-7498
e: tk@hfk.law

**By ECF**
Hon. Orelia E. Merchant
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11215

July 13, 2026

**Re:** ***Brooklyn Center for Independence of the Disabled, et al. v. Hochul, et al.,*** **Civil Action No. 26-cv-3492**

Dear Judge Merchant:

We represent Plaintiffs and write pursuant to Rule III.B. of Your Honor's Individual Practices and Rules in response to Defendants' pre-motion letter dated July 6, 2026. As explained below, Defendants do not have a viable motion to dismiss and should be directed to answer Plaintiffs' Complaint.

**Decisions Concerning Different State Laws Are Not Relevant.**

Each state has passed a different statute, and each statute must be analyzed separately. Thus, whether California, Colorado or Delaware's statutes have been upheld is not relevant to whether New York's attempt passes constitutional and legal muster. Indeed, the definition of "terminally ill" varies among the states (*compare* 16 *Del. C.* § 2502C(17) ("an incurable and irreversible disease, illness, or condition that as a medical probability, will result in death within 6 months.") *with* N.Y. Public Health Law § 2899-d(17) (defining terminal illness as "an incurable and irreversible illness or condition that has been medically confirmed and will, within reasonable medical judgment, produce death within six months **whether or not treatment is provided.**" (emphasis added))), and that difference renders the other decisions inapplicable to Defendants' arguments here. Thus, Defendants' argument is without merit.

**Plaintiffs Have Standing.**

Each of the individuals has standing to bring this case. The individual plaintiffs would die within six-months without ongoing medical intervention. Compl. ¶¶ 25, 32. Thus, each of the individual plaintiffs is terminal under the statute. Indeed, the statute provides for two ways to qualify under its provisions because those who have a medical condition that would be terminal within six months with medical care "*or*" without medical care both qualify. It has long been understood

that when a statute uses the word "or" someone is qualified under either option, and is not required to fulfill both options. *Campos-Chaves v. Garland*, 602 U.S. 447, 457 (2024) ("The word 'or' is almost always disjunctive, and is generally used to indicate an alternative." (cleaned-up)).

Further each of the entity plaintiffs have standing because their members are harmed by the statute (associational standing) and their core business activities are harmed (organizational standing). As to associational standing, Defendants contend that the complaint must fail because it does not identify specific members who suffer harm. Ltr. at 3. The Second Circuit, however, does not require names of specific members to establish associational standing at the pleading stage. *See Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006); *see also Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 122 n.7 (2d Cir. 2025). The Complaint meets the pleading requirement to show that the organizations have members who are harmed. *See* Compl. ¶¶ 36, 41, 44, 48, 53. Contrary to Defendants' assertion, the Complaint does not rest organizational standing on the same grounds rejected in *Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 390 (2024). To the contrary, the Complaint alleges in detail how the challenged statute presently and directly harms the organizations' core business activities. *See* Compl. ¶¶ 38-40, 42-43, 46-47, 54, 57-58, 62, 64.

**Plaintiffs State Claims Under The ADA, Rehabilitation Act and ACA.**

To state a claim under either the ADA or the Rehabilitation Act, plaintiffs must demonstrate: "(1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021). Defendants' letter articulates only a single basis for concluding that the statute does not violate the ADA, Rehabilitation Act and the ACA: that the statute requires a voluntary action. Ltr. at 2. That argument, however, ignores the allegations in the Complaint. The Complaint repeatedly pleads that Plaintiffs are at risk of being steered toward assisted suicide instead of toward suicide prevention and that the supposed choice in the statute is illusory. *See* Compl. ¶¶ 26, 35. Moreover, as a matter of law, the voluntariness of a government program does not exempt it from the anti-discrimination mandates of the ADA, Rehabilitation Act and ACA. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 601 (1999) (state that conditions receipt of public services on voluntary institutionalization engages in disability discrimination); *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998) (rejecting argument that Title II of ADA does not reach voluntary programs, holding that such programs cannot discriminate regardless of whether participants "are free to take or leave" them).

**Equal Protection.**

The State's words divide the public into two groups: "a very narrow group of people" (Tr:54:24) and everyone else. Anyone who currently walks into a doctor's office expressing a desire to end their life is currently provided with treatment to prevent that person from taking his or her own life. Following the effective date, a very small group—those are terminally ill under the statute—will be given different advice: the medical establishment will be permitted to assist them in ending their life. That two-track respond to suicidal intent is facially discriminatory, as one group receives suicide prevention, while the other receives suicide assistance. "[O]ur laws have consistently condemned, and continue to prohibit, assisting suicide. Despite changes in medical technology and

notwithstanding an increased emphasis on the importance of end-of-life decision making, we have not retreated from this prohibition." *Washington v. Glucksberg*, 521 U.S. at 720.

**Due Process.**

When a law implicates a fundamental right, such as the right to live, the law is subject to strict scrutiny and must be "narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993). Defendants' argument that the statute is voluntary ignores the complaint and other evidence submitted by Plaintiffs. Plaintiffs allege that, because of their conditions, they steered into taking their own lives. Compl. ¶¶ 26, 35. Indeed, even the Supreme Court has recognized that disadvantaged persons may be subject to coercion and undue influence at the end of their lives. *See Glucksberg*, 521 U.S. at 731-32. That allegation must be given every reasonable inference at this procedural stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The procedural due process analysis should have considered "the risk of an erroneous deprivation" of the interest through the current procedures and any value of additional safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Fundamentally, there is no state interest in assisting suicide—it is crime in New York and most other states. *See* New York Penal Law § 120.30. Thus, the statute cannot pass the rational basis test, as it fails the first step. Therefore, it cannot meet the higher standard of strict scrutiny.

**Sovereign Immunity**

Defendants' sovereign immunity defense fails. "Under the well-known exception to the Eleventh Amendment's grant of sovereign immunity from suit first set forth in *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 166 (2d Cir. 2013). "The Eleventh Amendment … does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 287 (2d Cir. 2003). Accordingly, the Court must reject Defendants' sovereign immunity defense.

**Personal Service**

Service on the New York State Board for Medicine and Chair Shelat was proper. CPLR 307(2) states: "Personal service on a state officer sued solely in an official capacity or state agency, which shall be required to obtain personal jurisdiction over such an officer or agency, shall be made by (1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or…." CPLR 307(2). Here, personal service was accomplished by delivering to the papers to "Aldo S.," who represented to the process server that he was authorized to accept service for Dr. Shelat and the BOM. That meets the requirements of CPLR 307(2). Further, Defendants' letter does not identify any authority to the contrary or in support of their position.

Respectfully submitted,

*/s/ Theodore A. Kittila*